1          UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF KANSAS
2

3    UNITED STATES OF AMERICA,

4        Plaintiff,

5    v.                          Docket No. 16-20060-01-JAR

6    LOGAN VIQUESNEY,            Kansas City, Kansas
                                 Date:   09/12/2017
7        Defendant.
     . . . . . . . . . . . . . . . . . . .
8

9            TRANSCRIPT OF SENTENCING
     BEFORE THE HONORABLE JULIE A. ROBINSON
10          UNITED STATES DISTRICT JUDGE

11

APPEARANCES:
12

For the Plaintiff:   Ms. Kim I. Flannigan
13                       United States Attorney's Office
                         360 U.S. Courthouse
14                       500 State Avenue
                         Kansas City, Kansas 66101
15

For the Defendant:   Mr. Tim Burdick
16                       Federal Public Defender's Office
                         201 U.S. Courthouse
17                       500 State Avenue
                         Kansas City, Kansas 66101
18

19

20

21

22

23   _____

     Kelli Stewart, CSR-KS, CCR-MO, RPR, CRR, RMR
24            Official Court Reporter
       259 U.S. Courthouse, 500 State Avenue
25             Kansas City, Kansas 66101

1          (9:32 a.m., proceedings commenced).

2          THE COURT:  All right.  We're here in United

3    States versus Logan Viquesney.  The case number is

4    16-20060.  Your appearances, please.

5          MS. FLANNIGAN:  Your Honor, the United

6    States appears by Kim Flannigan.

7          MR. BURDICK:  Tim Burdick on behalf of Mr.

8    Viquesney.  Logan Viquesney appears in person.

9          THE COURT:  All right.  I'm sorry I

10   mispronounced your name, Mr. Viquesney.

11         All right.  We're here for a sentencing this

12   morning.  The parties entered into a binding plea

13   agreement pursuant to 11(c)(1)(C).  The Court accepted

14   that plea agreement at the time of the plea hearing, and

15   so the sentence that I will be imposing and that I must

16   impose is consistent with the plea agreement.

17         Mr. Viquesney is subject to the provisions

18   of the Justice for Victims of Trafficking Act of 2015,

19   so the Court is required under that statute to assess an

20   amount of $5,000 per count on any non-indigent person

21   convicted of an offense under 18 U.S.C. Chapters--

22   Chapter 117, 18 U.S.C. Section 3014.

23         While Mr. Viquesney may not have-- presently

24   have financial resources to pay the assessment, his

25   future earning abilities may allow him to do so, so I

1    would like to address that with the parties.

2              Also, Mr. Viquesney is subject to

3    restitution per statute, but the Court tentatively does

4    not plan to impose an order of restitution.  The U.S.

5    Probation Office has contacted a representative for the

6    victim and no amount of restitution has been requested.

7              But with respect to the JVTA issue, Mr.

8    Burdick?

9              MR. BURDICK:  Judge, we would ask that the

10   Court make a finding that Mr. Viquesney be considered

11   indigent for purposes of this fine amount.

12             Mr. Viquesney obviously would have no funds

13   available to pay over the next nearly 15 years.  His

14   employment prospects given the nature of the offense are

15   probably not great.  I think that when he gets out he's

16   going to have a lot to deal with in terms of just

17   meeting day-to-day finances.

18             The other issue that-- that arises for

19   people that are in the Bureau of Prisons when these sort

20   of financial obligations are imposed is if they ever are

21   able to put themselves in a position to work for a

22   minimal amount of money while they're there or if family

23   is to provide them some money to be able to pay for

24   commissary, oftentimes what happens is there is an

25   amount that is withheld from that to go towards these

1   sort of financial obligations that they really have no

2   control over how much is withheld.

3           And I have recently been dealing with a

4   client on-- on a charge where there was restitution and

5   they're essentially withholding $100 every month whether

6   or not that money is there.  So if he has $110, 100 is

7   withheld.  If he has $75, all 75 is withheld, which

8   leaves him with no money for-- for commissary.  And we

9   don't really have a way to deal with that within the

10  Bureau of Prisons, so it creates even more of an issue

11  than just what happens once the person is out on

12  supervision.

13          And again, given Mr. Viquesney's finances

14  and the Court's finding of him being indigent at the

15  beginning of this case, we would ask that that finding

16  continue and the Court not impose the amount under the--

17  the JVTA.

18          THE COURT:  All right.  Thank you.  Ms.

19  Flannigan, do you have a different view?

20          MS. FLANNIGAN:  Your Honor, I do.  And here

21  is my thought:  Your Honor, the government agreed to a

22  sentence which is significantly below the low end of the

23  guideline primarily because of the defendant's history

24  and we-- we wanted a more extended term of supervised

25  release so that he could be monitored and to try to get

1    him in a position where we don't have similar conduct in

2    the future.  And honestly, the government believed that

3    he was somebody that needed to be monitored for an

4    extended period of time given his history and then the

5    current offense.

6                Because he is going to be on supervised

7    release for 20 years, I think that the likelihood that

8    at some point during the 20 years that he would have the

9    wherewithal to come up with $5,000 is not out of the

10   realm of possibility.  We only have one count, so we're

11   only talking about $5,000.

12               And while he may not currently have the

13   ability to make that payment, I think he certainly would

14   have the ability over the next 20 years of supervised

15   release to pay a minimal amount towards that until it

16   ultimately gets paid off.

17               If I had divided that by 20 years, I'm

18   pretty sure it's not a very large amount, but he would

19   have to pay each month for the next 20 years.  I think

20   the statute contemplates that it would be mandatory, and

21   we think that the defendant will have an ability to pay

22   that amount as we go forward.

23               THE COURT:  The statute does speak in

24   mandatory terms.  It says the Court shall assess an

25   amount of $5,000 on any non-indigent person.  Of course,

1    at this point Mr. Viquesney is indigent.  I've made that

2    determination.

3              The statute, and I'm referring to 18 U.S.C.

4    Section 3014, subsection (b), also indicates, though,

5    that this obligation is not a priority.  It comes behind

6    court-ordered fines, orders of restitution and any other

7    obligation related to victim compensation.  So the

8    statute in effect sets this as the lowest priority of

9    these kinds of obligations.

10             Mr. Viquesney is indigent.  He's going to

11   remain indigent throughout his period of incarceration.

12   Whatever employment he may be able to obtain inside the

13   Bureau of Prisons is still going to-- he's still going

14   to be at a level of indigency.  The statute doesn't

15   really address this, but it does speak in mandatory

16   terms.

17             And I'm wondering your view on me imposing

18   this as a condition of supervised release rather than as

19   a term of the sentence itself.  That way when he's on

20   supervised release, he could make his best efforts to

21   pay it.

22             As we all know, though, if someone makes

23   their best efforts to pay a financial obligation on

24   supervised release and they're not able to pay it in

25   full, it doesn't impair their ability to-- to stay out

1    of prison and remain on supervised release as long as

2    the Court is satisfied the person is trying to their

3    best.  We don't have debtors' prisons in this country

4    obviously.  So, I don't know, the statute doesn't

5    address this.

6              Mr. Burdick, what's your view of that?

7              MR. BURDICK:  Judge, I was going to-- if the

8    Court disagreed with-- with our position and request,

9    then my follow-up request was going to be to ask the

10   Court if there's some way it could be suspended until he

11   was on supervised release.  So I mean, I do see that as

12   a way for the Court to address one of our main concerns.

13             So if that's the way in which the Court was

14   inclined to go, we wouldn't object to that.  Obviously

15   our preference would still be that he not be saddled

16   with that burden on supervised release, but I guess my

17   response is if the Court is inclined to impose it in

18   that manner, it would not receive an objection from the

19   defense.

20             MS. FLANNIGAN:  And, Your Honor, if I might.

21   I'm just not sure as far as the legality, obviously not

22   having done the research.  But I think the same thing

23   could be accomplished by what Mr. Burdick just said,

24   which is go ahead and impose it as part of the sentence,

25   defer any collection until the time he is released from

1    prison and then-- then obviously the U.S. Attorney's

2    Office, their collection unit would try to collect.  And

3    if they weren't able to, then it would just kind of go

4    by the wayside during the term of his supervised

5    release.

6              THE COURT:  Is that something that the

7    Bureau of Prisons would honor?

8              MS. FLANNIGAN:  I don't see how they could

9    collect it if-- if it's not ordered until-- it's not

10   ordered to start being collected until the-- until he's

11   released from prison, but I don't-- I don't obviously

12   have the answer to that.

13             THE COURT:  All right.  The way-- the way I

14   view the statute is, one, it's mandatory that I make

15   this assessment.  I think there's a pretty interesting

16   argument, though, because it says for any non-indigent

17   person.  And when is that-- you know, if you take the

18   snapshot at the time someone is sentenced, you know, the

19   majority of people are not [sic] indigent and certainly

20   with a lengthy sentence and a sentence of this nature

21   for this nature of offense, one could argue - as Mr.

22   Burdick has - the indigency likely will continue and

23   perhaps for the rest of their life.

24             But rather than reach that issue, I'm

25   inclined to-- to assess this but to suspend-- to have

1    language in the judgment and commitment order that says

2    it's not collectable until the term of supervised

3    release commences.

4              If there's a problem, Mr. Viquesney should

5    get ahold of Mr. Burdick and let me know that and I'll

6    amend the J and C and take it out and make it a

7    condition of supervision, because I don't think that

8    it-- that it should be assessed against him while he's

9    in prison.  And, you know, he's facing a lengthy period

10   of prison and, you know, he ought to be able to work and

11   be able to spend money on commissary and the monies that

12   his parents or somebody else deposits for him as well.

13   I think that's kind of crazy to think that he couldn't

14   have any commissary rights because of some assessment

15   like this.

16             So that's what I'll do, and we'll make sure

17   the J and C says that.  And again, if we run into a

18   problem with the Bureau of Prisons, I'll deal with it

19   and do something to amend the J and C.

20             Okay.  All right.  So I'm going to go

21   forward now and announce proposed findings of fact and a

22   tentative sentence that will be consistent with the

23   binding plea agreement.

24             Before I do so, Mr. Burdick, is there any

25   allocution that you'd like to offer?  And, Mr.

1   Viquesney, if you would like to address me directly in

2   your own behalf, you have that right too.

3          MR. BURDICK:  Judge, there is one thing that

4   I would like to ask the Court to consider with regard to

5   the presentence investigation report.  We did not file

6   any objections and we did not have any at the time.

7   Just towards the end of this last week I was able to

8   obtain some medical records from CoreCivic or the

9   marshal's office with regard to Mr. Viquesney.

10          And I would ask that the Court have the

11   probation office amend the medical information in the

12   presentence investigation report to include the findings

13   in this MRI that was done on Mr. Viquesney.  There are

14   three particular impressions at the end of this

15   three-page report; two of them appear to be normal, one

16   of them appears to be abnormal.  And part of the reason

17   that I'm asking this to be included is I want to make

18   sure that the Bureau of Prisons has this information

19   directly.

20          Our other request is going to be that the

21   Court make a recommendation that Mr. Viquesney be

22   allowed to serve his time at the medical facility in

23   Springfield, Missouri; one, for the medical issues that

24   he's dealing with; and two, for the-- the ability for

25   his family to-- to have visits with him because that

1    would be close to the Kansas City area.

2              So I would ask the Court to allow us to

3    provide that information to probation so that they could

4    amend the-- the PSR so that that information goes

5    directly to the Bureau of Prisons.

6              THE COURT:  All right.  Ms. Lundell, is that

7    something that could just be added as an addenda to the

8    presentence report?

9              PROBATION OFFICER LUNDELL:  Your Honor, I

10   think the easiest thing would be just to note it in the

11   JCC that we're making a recommendation for Springfield,

12   here is why.  I know CoreCivic will send all medical

13   records to the Bureau of Prisons when the defendant

14   goes, so they should receive those.  But I can

15   definitely make a note of the recent MRI and the results

16   of that in the JCC.  I think that would be easier than

17   actually amending the report.

18             THE COURT:  Okay.  But CoreCivic-- the

19   medical records, CoreCivic has those?

20             MR. BURDICK:  Yes, they do, Judge.  The

21   reason that I would like something more than just

22   CoreCivic sending them is because Mr. Viquesney will be

23   designated before CoreCivic sends the information.  And

24   I would like for this to be taken into consideration

25   during his designation period.

1        So if the judgment includes the findings, I

2   mean, I-- that seems like an odd way to do it, but one

3   way or the other, I would like for the Bureau of Prisons

4   to have this information sooner rather than later so

5   it's taken into consideration for his designation.

6        THE COURT:  Could the medical records be an

7   addendum to the J and C itself?  Is there something that

8   would preclude that?  I don't know if there's a HIPAA

9   issue with that.  I mean, obviously it could be waived I

10  guess.  I don't know.

11       PROBATION OFFICER LUNDELL:  I'm not sure

12  about that, Your Honor.  I've never run into that.  I

13  just know my experience is amended reports just seem to

14  get confused and people get the wrong reports in their

15  hands and it just seems to create more confusion than

16  it's worth.  So we always try to just include it-- and I

17  can include a lot of detail in the JCC just to keep

18  things simpler but still--

19       THE COURT:  Okay.  All right.  Let's try

20  to-- is there-- like for example, there's a diagnostic

21  summary or something that we could just put verbatim in

22  the J and C from the MRI findings?

23       MR. BURDICK:  Yes, there is, Judge.  There's

24  an "Impression" section with three impressions and

25  it's-- it's like three or four sentences.  It's not all

1    that lengthy.

2            THE COURT:  Okay.  So I think in the J and C

3    we should put that verbatim and then the date of the

4    report so that they know that it's a very recent finding

5    as well.

6            MR. BURDICK:  Okay.  I'll provide that

7    information to probation after the hearing then.

8            THE COURT:  All right.

9            MR. BURDICK:  Thank you.

10           THE COURT:  Mr. Viquesney, is there anything

11   that you'd like to say to me directly in your own

12   behalf?  You have the right to do so if you'd like to.

13           THE DEFENDANT:  Not at this moment.

14           THE COURT:  Okay.  I'll give you another

15   chance later if you'd like to.

16           Ms. Flannigan, anything from you?

17           MS. FLANNIGAN:  No, Your Honor.  We believe

18   that the sentence that the parties have negotiated is an

19   appropriate one and since the Court has already accepted

20   it, we'd just ask that you follow that.

21           THE COURT:  All right.  So here's the

22   proposed findings of fact and tentative sentence, and

23   then I'll call on the parties once again and make a

24   final decision and final sentence:

25           The total offense level, 34.  Criminal

1    history category, V.  The statute sets a mandatory

2    minimum of ten years and a maximum of life in prison.

3    The guidelines recommend a sentence between 235 and 293

4    months.  The Court's tentative sentence is 180 months,

5    followed by 20 years of supervised release.

6              The statute sets a range of supervised

7    release between five years and life, and the guidelines

8    recommend the same range.  Under the statute and

9    guidelines, Mr. Viquesney is not eligible for probation.

10             The Court tentatively imposes no fine.  The

11   maximum fine under the statute is $250,000, while the

12   guideline range is-- I think it's 25,000 to 250,000 I

13   believe.

14             MR. BURDICK:  Judge, in paragraph--

15             THE COURT:  Well, no, it's 35,000 to 350,000

16   is what the guidelines recommend, but the statute caps

17   the fine at 250,000.

18             Restitution is mandatory under the statute

19   and guidelines.  None was requested in this case, so

20   tentatively there will be no order of restitution.

21   Tentatively there will be a $100 Crime Victims Fund

22   assessment, something that's mandated by the statute and

23   guidelines.  And the statute and guidelines require a

24   $5,000 JVTA assessment.  The Court tentatively imposes

25   that but suspends collection until 30 days after

1   supervised release commences.

2          The Court is required pursuant to 18 U.S.C.

3   Section 3553(a) to impose a sentence that is sufficient,

4   but not greater than necessary, to comply with the

5   purposes of sentencing identified in the sentencing

6   statute, 18 U.S.C. Section 3553.

7          In determining the particular sentence to be

8   imposed, the Court has considered the U.S. Sentencing

9   Guidelines which promote uniformity in sentencing and

10  assist the Court in determining an appropriate sentence

11  by weighing the basic nature of the offense, as well as

12  aggravating and mitigating factors.

13         The Court notes the parties have entered

14  into a binding plea agreement pursuant to

15  Rule 11(c)(1)(C) of the Federal Rules of Criminal

16  Procedure which the Court has previously accepted.

17         The Court has considered the plea agreement,

18  the statements and requests of the parties and the

19  presentence investigation report.

20         After reviewing the presentence report, the

21  Court finds that the sentencing guideline range of 235

22  to 293 months is correctly calculated based on a total

23  offense level of 34 and a criminal history category V.

24         This offense involves Mr. Viquesney

25  communicating with a 15-year-old girl through social

1   media and then traveling over state lines to engage in

2   sexual contact.  Mr. Viquesney drove to Virginia, picked

3   up the victim and traveled with her to Kansas City.

4   During their travels, Mr. Viquesney engaged in sexual

5   contact with the victim.  He was aware that she was a

6   minor and he took steps to avoid detection from law

7   enforcement.

8            The Court notes that this is Mr. Viquesney's

9   second conviction involving sexual contact with a minor

10   and that the investigation revealed that Mr. Viquesney

11   has a history of inappropriate communications with

12   underage females.

13            After considering all of these factors and

14   the advisory sentencing guidelines and the nature and

15   circumstances of the offense and Mr. Viquesney's history

16   and characteristics, the Court intends to sentence him

17   to a term of 180 months imprisonment, followed by 20

18   years of supervised release.

19            The Court believes that such a sentence is

20   sufficient, but not greater than necessary, to reflect

21   the seriousness of the offense, to promote respect for

22   the law, to provide just punishment, to afford adequate

23   deterrence to criminal conduct and to protect the public

24   from further crimes of the defendant.

25            The term of supervised release, in addition

1    to the imprisonment sentence, will allow Mr. Viquesney

2    the opportunity to receive correctional treatment in an

3    effective manner and assist with community

4    reintegration.

5         The Court intends to order Mr. Viquesney to

6    pay the mandatory special assessment of $100 to the

7    Crime Victims Fund.  As I've said, the Court tentatively

8    imposes a $5,000 assessment under the Justice for

9    Victims of Trafficking Act of 2015 but suspends

10   collection of that until 30 days after the commencement

11   of supervised release.  The Court tentatively waives

12   imposition of a fine because of Mr. Viquesney's

13   inability to pay.

14        Restitution under 18 U.S.C. Section 3663(a)

15   is applicable in this case.  A victim impact

16   notification was sent to the victim's family.  No

17   response was received, thus no order of restitution is

18   applicable in this case.

19        The Court tentatively imposes the mandatory

20   and special conditions of supervision as set forth in

21   Part D of the presentence report.  The nature of the

22   offense and the history outlined in the presentence

23   report warrant the conditions for no contact with

24   minors, no contact with the victim identified in this

25   matter, and any victim identified in Johnson County

1   District Court Case No. 14-CR-02359, also conditions for

2   cooperation with the policies of the U.S. Probation

3   Office's computer and Internet monitoring program,

4   conditions for participating in mental health treatment

5   or a sex offender treatment program, no possession of

6   sexually-explicit materials and, upon reasonable

7   suspicion, search of the defendant's property by the

8   U.S. Probation Office.

9          Mr. Viquesney is presently in custody, so

10   voluntary surrender is not appropriate.

11          Are there objections by the government to

12   the sentence as tentatively announced?

13          MS. FLANNIGAN:  No, Your Honor.

14          THE COURT:  And notice has been given to the

15   victim and the victim does not appear; is that correct?

16          MS. FLANNIGAN:  That is correct, Your Honor.

17   I haven't been advised that there are.

18          THE COURT:  Okay.  Anyone that represents

19   the victim here in the open courtroom?  I see not.

20          All right.  Mr. Burdick, any objections by

21   the defendant to the sentence as tentatively announced?

22          MR. BURDICK:  Judge, no objections.  Again,

23   we would request that the Court recommend placement at

24   the medical facility in Springfield, Missouri.

25          THE COURT:  All right.  I will make that

1   recommendation.  And before I make final decision and

2   announce final sentence, Mr. Viquesney, is there

3   anything more that you'd like to say?

4              THE DEFENDANT:  No, Your Honor.

5              THE COURT:  All right.  The Court determines

6   that the presentence investigation report as corrected

7   or modified by the Court and the previously-stated

8   findings are accurate and orders those findings

9   incorporated in the following sentence:

10             Pursuant to the Sentencing Reform Act of

11  1984, it is the judgment of the Court that the

12  defendant, Logan Viquesney, is hereby sentenced to the

13  custody of the Bureau of Prisons for a term of 180

14  months.

15             The Court will recommend designation to the

16  federal medical center at Springfield, Missouri, for

17  the-- for two reasons:  One, Mr. Viquesney's medical

18  condition as referenced and detailed in the judgment and

19  commitment order; and two, because of that facility's

20  proximity to Kansas City where Mr. Viquesney has strong

21  family support and would allow for visitation of family.

22             This term of imprisonment shall be followed

23  by a 20-year term of supervised release.

24             Within 72 hours of release from the custody

25  of the Bureau of Prisons, Mr. Viquesney shall report to

1    the U.S. Probation Office in the district in which he is

2    released.  While on supervised release, he shall comply

3    with the mandatory and standard conditions of

4    supervision adopted by this Court and the special

5    conditions of supervision, all as set forth in Part D of

6    the presentence report.

7                It is ordered Mr. Viquesney shall pay a $100

8    special assessment to the United States for the Crime

9    Victims Fund pursuant to 18 U.S.C. Section 3013.

10   Payment of this assessment is due immediately and may be

11   satisfied while in Bureau of Prisons custody.

12               Imposition of a fine is waived.  The Court

13   imposes a total JVTA assessment of $5,000 pursuant to

14   18 U.S.C. Section 3014 but suspends payment or

15   collection of this assessment until 30 days after

16   supervised release commences.

17               Both the government and defendant are

18   advised of their respective rights to appeal this

19   sentence and conviction.  An appeal from this sentence

20   is subject to 18 U.S.C. Section 3742 and it's subject to

21   any waiver of appellate rights in the plea agreement in

22   this case.

23               Mr. Viquesney is advised that it is your

24   right to appeal the conviction and sentence but only to

25   the extent you have not waived that right of appeal in

1   your plea agreement.  Also, you will lose your right to

2   appeal if you do not timely file a notice of appeal.

3            And Rule 4(b) of the Federal Rules of

4   Appellate Procedure gives you 14 days after the entry of

5   judgment in this case, which will probably be today, so

6   14 days after today or the entry of the judgment in this

7   case is your period of time in which to file a notice of

8   appeal.

9            If you request, the Clerk of the Court shall

10  immediately prepare and file a notice of appeal on your

11  behalf.  And if you are unable to pay the cost of an

12  appeal, you have the right to apply for leave to appeal

13  in forma pauperis.

14           Ms. Flannigan, are there any counts or

15  charging documents subject to dismissal?

16           MS. FLANNIGAN:  Your Honor, I don't believe

17  so.

18           THE COURT:  All right.  I'll remand Mr.

19  Viquesney to the custody of the marshals service pending

20  designation by the Federal Bureau of Prisons.  And I

21  wish you the best, Mr. Viquesney, with your physical

22  health but also with your mental and emotional health

23  and the many issues that you need to address there as

24  well.  So I wish you the best.

25           THE DEFENDANT:  Thank you, Your Honor.

1          THE COURT:  All right.  We will be in recess

2   on this case.

3          (10:01 a.m., proceedings recessed).

4

5

6          C E R T I F I C A T E

7

8

9      I, Kelli Stewart, a Certified Shorthand Reporter and

10   the regularly appointed, qualified and acting official

11   reporter of the United States District Court for the

12   District of Kansas, do hereby certify that as such

13   official reporter, I was present at and reported in

14   machine shorthand the above and foregoing proceedings.

15      I further certify that the foregoing transcript,

16   consisting of 22 pages, is a full, true, and correct

17   reproduction of my shorthand notes as reflected by this

18   transcript.

19      SIGNED April 12, 2018.

20

21

22

23          /s/ Kelli Stewart

24          Kelli Stewart, CSR, RPR, CCR, RMR

25